UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARBARA BECKER, personal representative
of the Estate of EVELYN JERANEK, deceased,

    Plaintiff,

vs.

CHRYSLER LLC, HEALTH CARE
BENEFIT PLAN,

    Defendant.

Case No. 09-C-344

**MEMORANDUM AND ORDER**

This case stems from a dispute over whether nursing home care received by Evelyn Jeranek prior to her death was covered by her health insurance. Plaintiff, the personal representative of Jeranek's estate, brought this action against Chrysler LLC Health Care Benefits Plan ("Plan") after the Plan's third party administrator, Humana, determined that Jerenek's care was not covered. The parties agree that Jerenek was a Plan beneficiary – her late-husband had been a long-time employee of American Motors Corporation. What the parties disagree on is whether the *type* of care Jerenek received was covered by the Plan. They have submitted an administrative record of over 7,000 pages and both seek summary judgment. This Court must determine whether Humana's denial of coverage was arbitrary and capricious. For the reasons set forth herein, summary judgment will be granted in favor of Defendant.

**BACKGROUND**

**1. Jeranek's Nursing Home Care**

Jeranek was admitted as a resident of Nu-Roc Nursing Home on November 15, 2006. (Am. Compl. ¶ 11.) At the time she was 88 years old and terminally ill. (*Id.* ¶¶ 30-34.) She had end stage congestive heart failure. (*Id.*) She suffered from several other ailments including Type 2 diabetes, reflux, anxiety, neuropathy; hyperlipidema, renal insufficiency and an aortic valve problem. (Plaintiff's Proposed Findings of Fact "PPFF", Dkt. 38 at ¶ 17.) She was on fourteen different medications. (*Id.*) Upon entering Nu-Roc, one of Jerenek's doctors estimated her life expectancy at one year. (*Id.*) She did not need to be in a hospital but her daughter – who had provided care for eight years – could no longer take care of her. (Reply Br., Dkt. 46 at 11.) The Nu-Roc nursing home was staffed by highly trained health care professionals and, by all accounts, Jerenek received quality care at the facility. During her stay at Nu-Roc Jerenek received 26 medical visits and 63 doctor's change orders. (PPFF ¶ 108.) While she was at Nu-Roc, Jerenek could not leave her bed without assistance. (Am. Compl. ¶ 28.) Jeranek remained at Nu-Roc for nearly two years until her death on October 22, 2008. (*Id.* ¶ 15.)

**2. The Plan**

The Plan includes a long-term illness care benefit and specifies what care is covered and what care is not covered. In pertinent part the Plan states:

> *Long-Term Illness Care*
> The long-term illness care benefit covers benefits for those enrollees confined to bed with a long-term illness which requires definitive medical and skilled nursing care to reach the expected maximum level of recovery possible for a treatable condition. The Program recognizes that there are some progressive terminal conditions which do not have a favorable prognosis. Terminal illness under the Program is a medical condition which has become moribund and requires definitive professional skilled nursing services as well as professional care of the degree and intensity provided for

2

> by the program for the proper care and treatment of the enrollee. Covered benefits for a terminally ill enrollee whose condition becomes primarily custodial or domiciliary in nature, and the medical condition no longer requires continuing skilled nursing service will not be payable.
>
> *Ineligible Medical Conditions*
> Covered benefits will not be payable for the following ineligible convalescent or long-term illness care:
> -Enrollees who have reached the maximum level of recovery possible for their particular condition and who no longer require definitive treatment other than routine supportive care;
> -Enrollees whose care is primarily domiciliary or custodial in nature. Domiciliary or custodial care is the provision of room and board, with or without routine supportive care and training and supervision in personal hygiene and other forms of self-care, to an enrollee who does not require definitive medical or skilled nursing services;
> -Terminal care of enrollees whose condition no longer requires definitive professional skilled nursing care

(DaimlerChrysler-UAW Health Care Administrative Services Manual, dated December 31, 2003 at 2.89-2.93 located at Administrative Record "AR" 6123-6124.)

The Plan had a medical service agreement with a third party administrator, Humana, to process claims. (Am. Compl. ¶ 13.) As the plan administrator Humana had discretionary authority to determine what claims it would pay. (AR 5079.) Humana made payments toward Jeranek's Nu-Roc nursing services for the period from November 20, 2006 to September 30, 2007 ("Phase One") in the amount of $50,097.67. (Am. Compl. ¶ 14.) After September 30, 2007 Humana stopped making payments because it determined that Jeranek's care was custodial in nature.

Jeranek remained at Nu-Roc for another year after Humana stopped making payments. Humana denied a claim for $64,669.74 in benefits for Jeranek's second year, October 1, 2007 through October 22, 2008 ("Phase Two"). (*Id.* ¶¶ 17, 23.) The plan also subsequently reversed its

3

decision approving the Phase One benefits of $50,097.67 for the time frame of November 20, 2006 through September 30, 2007. (*Id.* ¶ 18.)

**3. Administrative Appeals**

In early 2009 Plaintiff administratively appealed the denial of benefits in Phase Two. On April 30, 2009 an independent physician reviewed Jeranek's medical records and found that the care Nu-Roc provided Jeranek was custodial in nature. (AR 702-724.) The physician concluded that "[c]are on all dates in question would be considered custodial in nature. None of the skilled nursing services outlined in the plan document . . . were provided on any of the dates in question." (*Id.*) Humana then issued a written denial of benefits on September 2, 2009. (AR 750-753.)

On October 16, 2009 Humana received another appeal from Plaintiff, but this appeal related to Phase One coverage. Specifically, the appeal challenged Humana's determination that it had erroneously paid $50,976.67 for Jeranek's care between November 20, 2006 and September 30, 2007. (AR 864-586.) An independent physician reviewed the matter and concluded that care was "custodial in nature." (AR 1583-1584.) Humana then denied the appeal on November 10, 2009. (AR 1587-1589.)

On February 12, 2010 Plaintiff appealed Humana's determinations in both Phase One and Phase Two. On March 28, 2010 an independent physician conducted a third review of the documents related to Jeranek's care. Dr. James Wood determined that throughout the entire period – from November 20, 2006 to October 23, 2008 – Jeranek received custodial care. (AR 2823.) On April 9, 2010 Plaintiff submitted additional documentation related to Jeranek's care. (AR 3559-3589.) After receiving the new documentation, Humana obtained a fourth independent physician review on April 16, 2010. The new reviewing physician found that Jerenek had a chronic but stable

4

condition that did not require skilled nursing care. (AR 3588.) On May 4, 2010, Humana issued a written decision denying Plaintiff's appeal.

On June 14, 2010 Plaintiff requested reconsideration of Humana's May 4, 2010 decision. The documentation related to Jeranek's care was reviewed by another independent physician on July 26, 2010 who determined that the care was custodial and, therefore, not covered by the Plan. (AR 4760-4772.) The reviewer noted that Jeranek "was terminal and the expected result was her demise, albeit amidst devoted efforts at comfort care. The 'desired' result was a comfortable passing." (AR 4771.) He concluded that her care "was largely palliative in nature . . . and she did not require the [Skilled Nursing Facility] level of service." (*Id.*) On July 30, 2010 Humana denied Plaintiff's request for reconsideration. Humana provided three reasons for the denial: (1) Jeranek's prognosis was poor, she was at a maximum level of recovery and did not require definitive professional skilled nursing care; (2) Jerenek was receiving terminal care; (3) Jerenek actually received primarily domiciliary or custodial care. (AR 4776.)

On August 9, 2010 Plaintiff requested a second reconsideration of the May 4, 2010 decision. Humana denied Plaintiff's second request for reconsideration on October 15, 2010. On November 10, 2010 Plaintiff filed its amended complaint in this action. (Dkt. 25.)

**JURISDICTION AND LEGAL STANDARDS**

It is undisputed that this Court has jurisdiction over this case under the Employee Retirement Income Security Act of 1974 (ERISA). *See* 29 U.S.C. § 1132(a)(1)(B). Plaintiff's state law claims are preempted by ERISA. *Moran v. Rush Prudential HMO, Inc.,* 230 F.3d 959, 968 (7th Cir. 2000).

5

A denial of a claim for benefits under ERISA plan is normally reviewed *de novo*; however when a claimant is denied benefits under a plan that provides the plan administrator with clear discretionary authority to determine eligibility for benefits or to construe the terms of the plan, district courts apply a deferential standard of review, evaluating a denial of benefits under the arbitrary and capricious standard. *Leger v. Tribune Co. Long Term Disability Ben. Plan*, 557 F.3d 823, 831 (7th Cir. 2009). In determining if a decision is arbitrary and capricious, the Court defers to the Plan fiduciary's decision if "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Speciale v. Blue Cross and Blue Shield Ass'n,* 538 F.3d 615, 621 (7th Cir. 2008) (citation omitted). This standard of review is "highly deferential"; courts "look only to ensure that [the plan administrator's] decision has rational support in the record" and is not "downright unreasonable." *Jenkins v. Price Waterhouse Long Term Disability Plan,* 564 F.3d 856, 861 (7th Cir. 2009). Courts have "emphasized the importance of not substituting the court's judgment for that of the plan administrator on the ultimate question of benefits entitlement." *Walsh v. Long Term Disability Coverage for All Employees Located in the United States of DeVry, Inc.,* 601 F. Supp. 2d 1035, 1042 (N.D. Ill. 2009). The plan administrator's determination, however, must comply with ERISA's requirements "that specific reasons for the denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review.'" *Leger,* 557 F.3d at 831.

Here, the plain language of the Plan provides Humana, the plan administrator, with discretionary authority for the determination of claims and the interpretation of plan provisions:

> The Program Administrator shall have full power and authority to administer the Life, Disability and Health Care Benefits Program and to interpret its provisions, including, but not limited to, discretionary authority to determine eligibility for and entitlement to Program benefits, subject only to an arbitrary and capricious standard of review.

(Tab 58, AR 5079.) Accordingly the Court will review the denial of Plaintiff's claim under the arbitrary and capricious standard of review.[1] *Leger,* 557 F.3d at 831.

## ANALYSIS

Given the highly deferential standard of review this Court cannot say that Humana's decision was "downright unreasonable." *See Speciale*, 538 F.3d at 623. This Court's review "is limited to the reasons given by the plan administrator and does not extend to reweighing evidence." *Id.* Humana obtained five independent physician reviews and responded to Plaintiff's three appeals and two requests for reconsideration. These actions demonstrate that Jerenek's claims were carefully and reasonably considered. This Court finds that Humana reasonably interpreted the relevant provisions of the Plan and made a determination that has "rational support in the record." *See Jenkins,* 564 F.3d at 861.

Plaintiff makes a number of arguments in support of her motion for summary judgment including: (1) The Summary Plan Description is silent on a terminal illness benefit and therefore Humana improperly relied on it in denying Plaintiff's claims; (2) Jerenek did receive some skilled

---

[1] The parties agree that the arbitrary and capricious standard applies. (Plaintiff's Br., Dkt. 40 at 3 and 10; Defendant's Br. Dkt. 45 at 12.) Plaintiff argues that "because the Plan and the Administrator are the same" there is a conflict of interest. But Chrysler delegated its authority under the Plan to Humana, a separate and distinct entity from the Plan, so there is no conflict of interest. *See Fiedor v. Qwest Disablity Plan,* 498 F. Supp. 1221, 1231 (D. Minn. 2007) (no conflict of interest where "the sponsor completely delegates its discretion to a third-party administrator").

7

nursing care at Nu-Roc; (3) Nu-Roc qualifies as a Skilled Nursing Facility under the Plan's definition[2]; (4) The independent reviewing physicians and Humana improperly relied on Milliman's Care Guidelines[3]; (5) The Plan's requirement for "definitive" care was satisfied because Nu-Roc extended Jeranek's life by one year; and (6) Jerenek would have experienced transfer trauma if she was moved to a custodial care facility. For the reasons set forth below Plaintiff's arguments are unpersuasive. In light of the plain language of the Plan and the uncontested facts Humana's denial of care was neither arbitrary nor capricious.

**1. Summary Plan Description's Silence on Terminal Illness Benefit**

Plaintiff argues that the Summary Plan Description ("SPD") is silent on the existence of a terminal illness benefit and therefore Humana was not allowed to use the SPD to interpret the terminal illness aspect of the long-term illness benefit. (Plaintiff's Br, Dkt. 40 at 5.) The SPD does not reference the terminal illness benefit by name. In the SPD's section covering "Benefits For Treatment At A Skilled Nursing Facility" the SPD does, however, include the same exclusion found in the UAW Manual for a terminal illness benefit. Both sections state that benefits will not be provided for "[p]atients who have reached their maximum level of recovery possible for their particular condition and no longer require definitive treatment other than routine supportive care."

---

[2] It is undisputed that Nu-Roc was certified as a facility able to provide skilled nursing care. But the issue here is whether Humana unreasonably concluded that the *care* Jerenek received at Nu-Roc was not covered by the Plan. The fact that Nu-Roc is a certified skilled nursing facility has no bearing on whether Jerenek needed or received care covered by the Plan. Plaintiff's argument on this point will not be addressed further.

[3] The Milliman Care Guidelines are evidence-based care guidelines used at hospitals nationwide, a copy of which can be found at AR 7187-7198.

8

(AR 6123, AR 6653, AR 6767, AR 6962.) Thus the SPD at least arguably addresses the terminal illness benefit.

Even assuming that the SPD is silent on the existence of a terminal illness benefit, such silence does not trump the plan document because there is no *conflict* between the SPD and the Plan. *Mers v. Marriott Intern. Group Accidental Death and Dismemberment Plan,* 144 F.3d 1014, 1023-24 (7th Cir. 1998); *see also Sprague v. General Motors Corp.,* 133 F.3d 388 (6th Cir. 1998) (*en banc*) ("[a]n omission from the summary plan description does not, by negative implication, alter the terms of the plan itself"). This makes sense because the SPDs are designed to "provide a capsule guide in simple language for employees." *Herrmann v. Cencom Cable Assocs., Inc.* 97 F.2d 978, 984 (7th Cir. 1992.) "If silence in the SDD were enough to trump the underlying plan, then SPDs would mushroom in size and complexity until they mirrored the plans." *Mers,* 144 F.3d at 1024. Here there is no conflict between the SPD and the Plan – in fact they seem consistent. Accordingly, to the extent Humana relied on the SPD in reaching its determination, such reliance was neither arbitrary nor capricious.

**2. " Continuing Skilled Nursing Services"**

Plaintiff takes issue with the fact that the Plan does not define the term "continuing skilled nursing services." As such, Plaintiff argues that Humana's coverage determination was unreasonable.

Before addressing Plaintiff's arguments I turn, again, to the plain language of the UAW Manual. First the Plan states it will not pay benefits "for a terminally ill enrollee whose condition becomes primarily custodial or domiciliary in nature, and the medical condition no longer requires continuing skilled nursing service". (AR 6123) Such skilled nursing facility benefits for long term

9

illness care relate to "those enrollees confined to bed with a long-term illness which requires definitive medical and skilled nursing care to reach the expected maximum level of recovery possible for a treatable condition." (*Id.*) Thus the issue is whether the care Jerenek received was *primarily* custodial or whether the care was continuing skilled nursing service. Regardless of whether Jerenek was at a skilled nursing facility and regardless of whether she received some skilled care, Humana's decision to deny benefits was reasonable so long as the care she received was primarily custodial. As explained further below, the fact that five independent physician reviews found that the care was primarily custodial demonstrates that Humana's determination was neither arbitrary nor capricious.

Plaintiff's arguments on skilled care versus domiciliary care are supported, not by evidence, but rather by the conclusions of Plaintiff's counsel. Counsel reviewed Jerenek's medical records and assumed that certain medical entries were indicative of "skilled" care. For example Plaintiff's counsel decided that certain medical entries indicate that skilled care was provided to Jerenek. For example the phrases "will continue to assess", "will continue with plan of care", "mobility", and "elevation" and other such phrases equate to skilled care in the view of Plaintiff's counsel. (Plaintiff's Br., Dkt. 40 at 8.) Plaintiff's counsel counted up the number of times such entries appeared in Jerenek's medical records to compile statistics which, he argues, show that Jerenek's care was skilled. By Plaintiff's count, Jerenek received at least one "skilled" nursing service on 388 of the 702 days she was at Nu-Roc. (*Id.* at 9.) Plaintiff contends this ratio shows the services were both skilled and continuing. According to Plaintiff, because Jerenek sometimes needed skilled care and sometimes did not, it follows that skilled nursing services always needed to be at the ready. (*Id.* at 9-10.) The question here, though, is whether Humana arbitrarily and capriciously

determined that Jerenek's care was custodial. The question is not what percentage of the days Jerenek received one "skilled" service as that term is defined by Plaintiff's counsel.

Indeed, analysis by Plaintiff's counsel is not evidence. No expert has stated that Jerenek received skilled care. Ultimately this Court is presented with, on one hand, an assessment performed by Plaintiff's counsel and, on the other hand, five independent opinions from medical doctors. The former is argument; the latter is evidence. Five independent physician reviews considered Jerenek's medical records – the same records reviewed by Plaintiff's counsel – and concluded that the care she actually received was custodial rather than skilled in nature. The fact that five independent physician reviews found Jerenek's care was custodial is compelling evidence that Humana's determination was reasonable. The fact that Plaintiff's own interpretation of "continuing skilled nursing care" differs from that of five independent physician reviews does not create a genuine issue of material fact where the only issue now before the Court is whether Humana's determination is arbitrary and capricious.

**3. "Definitive" Care**

Plaintiff also takes issue with Humana's interpretation of the term "definitive" in the Plan. (Plaintiff's Br., Dkt. 40 at 19-20.) Plaintiff's argument regarding "definitive" care is unavailing. Plaintiff assumes that "definitive" care is such care that is medically necessary. Plaintiff then argues that because Jerenek outlived her one year life expectancy, her care must have been medically necessary. But the fact that Jerenek outlived her estimated life expectancy has no bearing on the ultimate issue: what type of care she was actually provided. Even assuming that Jerenek did receive "definitive" care does not alter this Court's determination that Defendant is entitled to summary judgement. As explained above Humana's position on skilled nursing care is reasonable

11

because five independent physician reviews determined that Jerenek received custodial, rather than skilled, care. Humana's denial of care was neither arbitrary or capricious based solely on the fact that Jerenek did not receive continuing skilled care. An analysis of "definitive" care is simply not outcome determinative here.

**4. Use of Milliman's Care Guidelines**

The dispute over reliance on Milliman's Care Guidelines can also be resolved quickly. Plaintiff points to several variations between Milliman's and the Plan.[4] Plaintiff also notes that the independent reviewing physicians and Humana referred to Milliman's Care Guidelines. Be that as it may, Humana's care determination was otherwise well supported and based on a reasonable explanation of the relevant Plan documents. Milliman's Care Guidelines did not control Humana's decision but rather were but one of many factors in the decision process. In light of the totality of the circumstances – Jeranek's health condition, the medical records, her prognosis, her life expectancy, and review of her care by independent physicians – Humana reasonably concluded that the care she received was custodial in nature. This Court cannot determine that Humana's decision

---

[4] For example Milliman's arguably sets out a stricter standard than the SPD for skilled nursing care. The SPD explains that "skilled nursing services are those which must be furnished by or under the direct supervision of professionally trained and licensed nursing personnel (to achieve the medically desired result, and to ensure the safety of the patient. A skilled nursing service requires specialized (professional) training; or observation and assessment of the medical needs of the patient; or supervision of a medical treatment plan involving multiple services where specialized health care knowledge must be applied in order to attain the desired medical results." (AR 6122) In contrast, Milliman's notes that skilled nursing services are "so inherently complex that it can be safely and effectively performed only by, and under the supervision of technical personnel" and must fit into one of the following categories: acute rehabilitation services; subacute or skilled facility rehabilitative services, parenteral nutrition; IV, epidural, or intrathecal medication; respiratory care; radiation therapy; chemotherapy; dialysis; transfusions; treatment for pressure or stasis ulcers; surgical wound care; treatment for open lesions; treatment for foot infections; burn care; or tube feeding. (AR 7188-9)

was arbitrary and capricious simply because Milliman's Care Guidelines was considered in the analysis.

**5. Transfer Trauma**

Finally, Plaintiff contends that Jereneck would suffer "transfer trauma" as a result of Humana's determination that Jerenek was not entitled to benefits. (Plaintiff's Br., Dkt. 40 at 24.) Plaintiff argues that the prospect of transferring the elderly woman over 100 miles to another facility would have caused trauma to the elderly patient, even if she could have received equivalent care in a less costly intermediate care facility. But the issue is not where Jerenek should have received health care or how she was supposed to get there. The only issue is whether Humana's determination that Jerenek received custodial care was arbitrary and capricious. As explained above Humana's denial of benefits was reasonable in light of the undisputed fact that five independent physician reviews concluded that Jerenek's care was primarily custodial rather than continuing skilled care.

## CONCLUSION

Plaintiff has failed to demonstrate that there is a genuine issue of triable fact with respect to the reasonableness of Humana's decision to deny her claim. The Court, therefore, finds that Defendant is entitled to entry of summary judgment in its favor. Accordingly and for the reasons set forth herein Plaintiff's motion for summary judgment (Dkt. 39) is **denied.** Summary judgment is **granted** in favor of Defendant.

**SO ORDERED** this 29th day of June, 2011.

                                            s/ William C. Griesbach
                                            William C. Griesbach
                                            United States District Judge